

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2008

# Hahnemann Univ Hosp v. All Shore Inc

Precedential or Non-Precedential: Precedential

Docket No. 05-4628

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Hahnemann Univ Hosp v. All Shore Inc" (2008). *2008 Decisions*. Paper 1645.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1645

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 05-4628 & 06-1825

———————

HAHNEMANN UNIVERSITY HOSPITAL

v.

ALL SHORE, INC.;
ALL SHORE, INC. HEALTH PLAN;
ALL SHORE, INC. EMPLOYEE BENEFIT PLAN,

ALL SHORE, INC.;
ALL SHORE, INC. HEALTH PLAN,

Defendants/Third-Party Plaintiffs

v.

PLAN VISTA SOLUTION, formerly NPPN,

Third Party Defendant

All Shore, Inc. and *All Shore, Inc. Employee Benefit Plan,

<u>Appellants</u>

*Amended pursuant to Clerk's Order of 11/23/05

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-04406)
District Judge: Hon. Clifford Scott Green

———————

Argued October 23, 2007

BEFORE: FISHER, STAPLETON
and  COWEN, <u>Circuit Judges</u>

(Filed: January 29, 2008)

William P. Marshall, Esq. (Argued)
3101 Trewigtown Road
P.O. Box 267
Colmar, PA 18915

Counsel for Appellants

Mark D. Herbert, Esq. (Argued)
Law Offices of Mark Douglas Herbert
2215 Ford Street
Golden, CO 80401-9931

Counsel for Appellee

---

## OPINION

---

COWEN, <u>Circuit Judge</u>.

Defendants-Appellants, Allshore, Inc. Employee Benefit Plan ("Allshore Plan") and Allshore, Inc., appeal from the District Court's grant of summary judgment in favor of Plaintiff-Appellee, Hahnemann University Hospital ("Hahnemann").  The Appellants also appeal the District Court's order granting Hahnemann's motion for attorney's fees and costs.  For the following reasons, we will affirm the District Court's grant of summary judgment in favor of Hahnemann.  However, we will vacate and remand the order granting attorney's fees and costs to Hahnemann.

### I.  BACKGROUND

This case arises out of the medical treatment of a patient at Hahnemann in March 1999.  The patient was covered under

2

the Allshore Plan.  The Allshore Plan was a health benefit plan administered by Allshore, Inc., and regulated by the Employee Retirement Income Security Act ("ERISA").  Under the terms of the Allshore Plan, Allshore, Inc. exercised all discretionary authority and control over the administration of the Allshore Plan as well as the management and disposition of plan assets. The plan document gave Allshore, Inc. the ability to hire another agency to perform claims processing and other specified services in relation to the Allshore Plan.  However, the plan document stated that if such an agency was hired, it would not be considered a fiduciary of the Allshore Plan.  If such an agency was hired, it would not exercise any discretionary authority or responsibility held by Allshore, Inc.  Allshore, Inc. hired Benefit Concepts, Inc. ("BCI") to act as claims administrator for the Allshore Plan.

In April 1999, Hahnemann submitted a medical bill to the Allshore Plan for approximately $250,000 for the costs incurred with treating the patient at Hahnemann. Hahnemann submitted its bill rather than the patient because the patient assigned her claims for benefits under the Allshore Plan to Hahnemann.  BCI received Hahnemann's claim because it was the claims administrator of the Allshore Plan.  Under the terms of the Allshore Plan, the patient paid a $200 deductible.  The Allshore Plan would then pay 80 % of the first $10,000 in charges, and 100% of the charges thereafter.

Upon receiving Hahnemann's claim for benefits, BCI sought to determine whether a preferred provider organization ("PPO") option applied to the claim.  As a third-party claims administrator, BCI entered into contracts with various PPOs which allowed a health benefit plan access to the PPOs' price discounts, even though there might not have been an agreement between the health benefit plan and the PPO itself.  These are called passive PPOs.  Upon analyzing Hahnemann's claim for benefits, BCI determined that a 10 % discount might apply to Hahnemann's claim based upon a PPO established by MultiPlan, Inc. ("MultiPlan").

Hahnemann did not receive a check for the amount it requested, or even an amount applying a 10 % discount.  Instead,

the managing general underwriter concluded that a 40 % discount was applicable to Hahnemann's charges through a different PPO. Specifically, the underwriter determined that the National Preferred Provider Network ("NPPN") PPO applied. Thus, Hahnemann only received 60 % (or approximately $150,000) of the charges it originally submitted. Hahnemann received this payment in September 1999.

After receiving payment, Hahnemann questioned the applicability of the 40 % discount because it did not have a contract with NPPN. However, Hahnemann did not know how to question the payment because the explanation of benefits it received accompanying the payment did not state where to submit its claims for administrative review. Eventually, Hahnemann's counsel requested review from BCI in April 2000. Hahnemann sought review over whether the 40 % NPPN discount was appropriate for the charges it submitted.

In March 2003, NPPN advised BCI that the discount should not have been applied to Hahnemann's claim. After waiting several more months without receiving the balance owed, Hahnemann filed this action against the Allshore Plan and Allshore, Inc. in July 2003. Hahnemann filed its complaint to recover benefits owed pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA.

After the close of discovery, the parties filed dueling motions for summary judgment. The District Court heard oral argument on the motions on September 14, 2005. On September 15, 2005, the District Court granted Hahnemann's motion for summary judgment and denied the Appellants' motion. It deferred entry of final judgment so that Hahnemann could file a motion regarding attorney's fees and costs.

The Appellants subsequently filed a motion for reconsideration and Hahnemann filed a motion for attorney's fees and costs. On February 9, 2006, the District Court conducted a hearing on the motion for reconsideration as well as the motion for attorney's fees and costs. On February 10, 2006, the District Court granted in part the motion for reconsideration,

only to change the judgment amount.[1]  It denied the motion for reconsideration in all other respects.  Also, the District Court granted Hahnemann's motion for attorney's fees and costs.  It awarded Hahnemann $136,182.50 in attorney's fees as well as Court costs in the amount of $4,017.26 and $3,372.72 in travel and expense costs.

The Defendants filed a motion to alter or amend judgment.  The District Court denied the motion on March 6, 2006.  Subsequently, on March 8, 2006, the Defendants filed this appeal.[2]

## II.  APPELLATE JURISDICTION AND STANDARD OF REVIEW

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  Our review over the District Court's grant of summary judgment in favor of Hahnemann is plenary.  See Post v. Hartford Ins. Co., 501 F.3d 154, 160 (3d Cir. 2007).  We apply the same standard as the District Court; specifically, "[s]ummary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005)(internal quotation marks and citations omitted).  "'An award of . . . attorneys' fees to a prevailing plaintiff in an ERISA case is within the discretion of the district court and may only be reversed for abuse of

---

[1]  The District Court initially awarded Hahnemann $101,082.36 in its September 15, 2005 order.  However, in its final order of judgment, the District Court reduced the judgment award to $100,982.29.

[2]  Initially, the Appellants filed their notice of appeal on October 14, 2005, C.A. No. 05-4628, in response to the District Court's initial entry of summary judgment in favor of Hahnemann.  However, a final entry of judgment was not entered until February 10, 2006.  Subsequently, Appellants filed a second notice of appeal, C.A. No. 06-1825.

discretion.'" McPherson v. Employees Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256 (3d Cir. 1994)(quoting Schake v. Colt Indus. Operating Corp. Severance Plan, 960 F.2d 1187, 1190 (3d Cir. 1992)). We review the District Court's factual determinations, "including [the court's] determination of an attorney's reasonable hourly rate and the number of hours he or she reasonably worked on the case, for clear error." United Auto. Workers Local 259 v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007)(internal quotation marks and citation omitted). We exercise plenary review over the legal standards employed by the District Court used in calculating the award. See id. (citations omitted).

## III. DISCUSSION

On appeal, Appellants raise several issues. First, they assert that the District Court erred in granting summary judgment in favor of Hahnemann because its claim was time-barred. Second, they argue that Hahnemann failed to timely file its claim for administrative review. Third, they assert that material issues of fact precluded the District Court's entry of summary judgment because a 10 % discount applied to Hahnemann's charges. Fourth, they argue that the entry of a monetary judgment against Allshore, Inc. was improper. Finally, the Appellants make several arguments objecting to the District Court's award of attorney fees and costs. Each of these arguments will be considered in turn.

### A. Statute of Limitations

Hahnemann claims that it is entitled to recover unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA. This section allows a plan participant or a beneficiary "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Id. ERISA does not include a specific statute of limitations for claims brought under this statutory provision. However, we have stated that, "[a]s a general rule, when Congress omits a statute of limitations for a federal cause of action, courts 'borrow' the local time limitation most analogous to the case at hand." Gluck v. Unisys Corp., 960

6

F.2d 1168, 1179 (3d Cir. 1992)(internal quotation marks and citations omitted). The statutory limitation most applicable to a claim for benefits under Section 1132(a)(1)(B) is a breach of contract claim. See id. at 1181. In Pennsylvania, a breach of contract claim has a statute of limitations of four years. 42 Pa. Cons. Stat. Ann. § 5525(a)(8). The parties are allowed to contract for a shorter limitation period, so long as the contractual period is not manifestly unreasonable. See, e.g., Hosp. Support Servs., Ltd. v. Kemper Group, Inc., 889 F.2d 1311 (3d Cir. 1989).

The Appellants argue that the plan document contained a one-year limitation period. They assert that this period barred Hahnemann's July 2003 complaint, which was filed almost four years after Hahnemann received the improper payment. The Appellants rely on Article X of the plan document entitled, "Filing a Claim." Section 7 of that article states that "[a]ll claims must be filed with the Plan within the twelve (12) month period from the date of the expense."

We reject Appellants' assertion that this clause created a contractual statute of limitations on Hahnemann's cause of action for benefits under Section 1132(a)(1)(B). This provision in the plan document only applied to the filing of "claims" to the plan. It did not constitute the establishment of a contractual statute of limitations for a beneficiary of the plan to bring a § 1132(a)(1)(B) action under ERISA. Furthermore, we note that Hahnemann complied with the provision by submitting its claim for benefits to the Allshore Plan in April 1999, one month after the expenses were incurred in March 1999.

Next, Appellants allude to the possibility that a three-year statute of limitations barred Hahnemann's action. Specifically, they assert that the statute of limitations set forth in 29 U.S.C. § 1113 of ERISA applies. That section states that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a

7

violation of this part, after the earlier of -

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C. § 1113. Appellants assert that Hahnemann's action is untimely under this section because Hahnemann filed its complaint in July 2003, more than three years after it was aware of the improper payment. However, Appellants' argument overlooks the fact that Hahnemann filed its complaint to receive benefits pursuant to Section 1132(a)(1)(B). As previously explained, a four-year statute of limitations applies under the circumstances of this case in light of Pennsylvania's breach of contract statute of limitations. Hahnemann filed the complaint in July 2003, less than four years after it was aware of the improper payment. Therefore, the complaint is timely because it was filed within the applicable four-year statute of limitations period.[3]

## B. Time to File Administrative Review

Second, Appellants assert that Hahnemann failed to timely file its request for administrative review under the terms of the Allshore Plan. Hahnemann filed its request for administrative review in April 2000. This review resulted in

---

[3] Additionally, the District Court factually determined that Hahnemann's claim would satisfy the three-year statute of limitations set forth in Section 1113(2). To the extent that this three-year period applies, it would only apply to the claim against Allshore, Inc. Furthermore, we would conclude that the District Court's factual determination was not clearly erroneous based upon the lack of actual knowledge of the breach of fiduciary duty. See Gluck v. Unisys Corp., 960 F.2d 1168, 1177 (3d Cir. 1992).

NPPN concluding that the 40 % discount did not apply to Hahnemann's claim for benefits.

The Allshore Plan states that if one believed that a claim was improperly settled, the following process was available: "[w]ithin sixty (60) days of receiving notice of the claim settlement, request a review of the processed claim by written request to the Plan. The Plan will review the processed claim and inform you whether or not an error was made." The Appellants assert that because Hahnemann did not submit its request for administrative review until April 2000 (approximately seven months after receiving the improper payment applying the 40 % discount), it did not comply with the sixty-day time period set out in the Allshore Plan. Hahnemann responds that the document which accompanied the payment applying the 40 % discount fell short of complying with ERISA's statutory and regulatory requirements. Thus, Hahnemann asserts that the sixty-day window to apply for administrative review was never triggered.

ERISA states that:

> In accordance with regulations of the Secretary, every employee benefit plan shall -
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Furthermore, the regulations in 1999 provided that a notice of a claim denial must state:

(1) The specific reason for the denial;
(2) Specific reference to pertinent plan provisions on which the denial is based;
(3) A description of any additional material or information necessary for the claimant to perfect a claim and an explanation why such material or information is necessary; and
(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. § 2560.503-1(f)(1999).[4] The Appellants do not contest that the notice to Hahnemann accompanying the September 1999 payment failed to comply with these regulations. Indeed, the accompanying document did not state any information to put Hahnemann on notice regarding how to submit a claim for administrative review. Because the letter to Hahnemann did not state the appropriate steps for administrative review, the sixty-day time bar to seek administrative review was never triggered. See, e.g., Epright v. Envtl. Res. Mgmt., Inc. Health & Welfare Plan, 81 F.3d 335, 342 (3d Cir. 1996)(citing White v. Jacobs Eng'g Group Long Term Disability Plan, 896 F.2d 344, 350 (9th Cir. 1989)).[5] Accordingly, Hahnemann's

---

[4] The regulation has since been amended.

[5] Unlike Epright, Hahnemann was not the plan participant. Rather, the patient who received the treatment at Hahnemann was the plan participant. However, the Appellants do not contest that Hahnemann is a beneficiary of the Allshore Plan. See 29 C.F.R. § 2560.503-1(f)(4)(stating that notice must state appropriate steps if beneficiary wishes to submit claim for review). Furthermore, Appellants do not contest that the plan participant assigned her claims to Hahnemann. See, e.g., Principal Mutual Life Ins. Co. v. Charter Barclay Hosp., Inc., 81 F.3d 53, 55-56 (7th Cir. 1996)(stating that if there is a valid assignment, the hospital

request for review seven months after actually receiving the payment applying the improper 40 % discount was timely because the sixty-day window set out in the Allshore Plan was never triggered. The fact that Hahnemann correctly guessed to submit its claim to BCI for review is of no consequence because the letter which accompanied the improper payment failed to state the proper steps that Hahnemann could take in seeking administrative review.[6]

## C. Applicability of a 10 % Discount

Third, Appellants assert that the District Court erred in granting summary judgment in favor of Hahnemann because material issues of fact existed regarding the applicability of whether a 10 % discount applied to Hahnemann's claim. Specifically, the Appellants allude to contracts between MultiPlan and BCI as well as Donald Rubin, Inc. and BCI. The two MultiPlan agreements relied on by Appellants on appeal were applicable to practitioners. These agreements were not applicable to Hahnemann's claim for benefits. Indeed, Mr. Christopher Moyer, the PPO Manager designated by BCI, testified during his deposition that these contracts did not apply to Hahnemann's claims.[7] Furthermore, Appellants cannot rely

_____

becomes the only claimant because the original claimant gives up her claim by the assignment).

[6] Additionally, we note that the review proceeded as if Hahnemann's request for administrative review was timely. This resulted in NPPN concluding that the 40 % discount was improper.

[7] We note that Appellants cited to a facility agreement between Hahnemann and MultiPlan during the District Court proceedings (but not on appeal). However, even if the Appellants did rely on this agreement on appeal, we note that the agreement stated that payment needed to be made within thirty (30) days from receipt of the bill for any discount to apply. Otherwise, any payment received after thirty days would be paid at billed charges. Hahnemann was paid well after this time period expired. Additionally, it was not even paid an amount that applied a 10 %

on their conclusory statements that Hahnemann had a contract under the Rubin PPO to extend a discount to the charges in this case. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999)(noting that conclusory allegations do not satisfy a nonmoving party's duty to show that a material issue of fact exists once the moving party points to evidence demonstrating that there is no issue of material fact). Thus, there was no material issue of fact with respect to this issue.

## D.  Judgment Against Allshore, Inc.

Next, Allshore, Inc. asserts that the District Court should not have entered judgment against it as an entity. Recently, we stated that when a plaintiff seeks recovery of benefits pursuant to Section 1132(a)(1)(B), "the defendant is the plan itself (or plan administrators *in their official capacities only*)." Graden v. Conexant Systems, 496 F.3d 291, 301 (3d Cir. 2007)(emphasis added). Thus, if entitlement to benefits is established, the court can direct the plan administrator to pay them from the assets of the plan, much as a trustee may be compelled to satisfy a trust obligation from trust assets. See, e.g., Hall v. Nat'l Gypsum Co., 105 F.3d 225, 229-30 (5th Cir. 1997).

However, Hahnemann did not sue Allshore, Inc. seeking benefits from the Allshore Plan's assets. Rather, it sued both the Allshore Plan and Allshore, Inc., and requested that it "recover of and from Allshore [Inc.] and the [Allshore] Plan, jointly and severally." Therefore, the judgment Hahnemann secured against Allshore, Inc. was not in its official capacity. The mere fact that Hahnemann established that it was entitled to benefits from the Allshore Plan did not make Allshore, Inc. liable in an individual capacity. Indeed, ERISA states that, "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." 29 U.S.C. § 1132(d)(2). Nevertheless, this does

---

discount. Thus, any discount under this agreement could not have applied based on these circumstances.

12

not necessarily mean that Allshore, Inc. cannot be held individually liable. Allshore, Inc. can be held liable if the facts established an individual basis against it. See id. Two possible bases appeared to arise in this case for Allshore, Inc.'s liability: (1) that Allshore, Inc. agreed to be financially liable for the medical expenses the patient incurred at Hahnemann; and (2) that Allshore, Inc., as plan administrator, owed a fiduciary duty which it breached by refusing to pay the claim without any justification. It appeared that the District Court accepted both of these theories of liability. For the following reasons, we will affirm the judgment against Allshore, Inc., based upon this second rationale.

When a denial of "benefits due" arises from a plan administrator's breach of its fiduciary obligations to the claimant, Sections 1132(a)(1)(B) and (d) permit the beneficiary to seek redress for the breach directly from the plan administrator as a fiduciary. Indeed, as the Supreme Court has noted:

> a fiduciary has obligations other than, and in addition to, managing plan assets . . . . For example . . . a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of plan documents . . . . ERISA specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents *and the payment of claims*, one that is outside the framework of the second subsection . . . and one that runs directly to the injured beneficiary. § 502(a)(1)(B).

Varity Corp. v. Howe, 516 U.S. 489, 511-12 (1996)(internal citations omitted and emphasis added). Thus, a breach of these fiduciary obligations will satisfy the limitations set forth in

13

Section 1132(d) because there is an individual basis for recovery.

As previously noted, Allshore, Inc. was the plan administrator and exercised all discretionary authority and control over the administration of the Allshore Plan as well as the management and disposition of plan assets. Thus, Allshore, Inc. was clearly a fiduciary to the plan. See 29 U.S.C. § 1002(21)(A)(stating that a person is a fiduciary with respect to the plan if he exercises any discretionary authority or discretionary control respecting management of the plan or has authority or discretionary responsibility in the administration of the plan). ERISA requires that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Furthermore, a fiduciary must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

Upon reviewing the record with respect to the circumstances surrounding the payment (or lack thereof) of benefits to Hahnemann, there is ample evidence to support the finding that Allshore, Inc. breached a fiduciary duty that it owed to Hahnemann as assignee of the patient in this case. See 29 U.S.C. § 1104 (discussing obligations fiduciary owes to plan participants and beneficiaries); cf. Varity Corp., 516 U.S. at 506 (illustrating conduct by a plan administrator that amounts to a breach of fiduciary duty). Therefore, the District Court did not err in entering judgment against Allshore, Inc.[8]

E. Attorney's Fees and Costs

---

[8] Additionally, we note that during the February 9, 2006 oral argument before the District Court, Allshore, Inc. acknowledged that it was a proper party. Indeed, Allshore, Inc. noted that the only question with respect to its liability was whether the statute of limitations against it as an entity expired before Hahnemann filed suit.

14

Finally, Appellants contest the District Court's award of attorney's fees and costs to Hahnemann. The District Court had discretion to award attorney's fees to Hahnemann in this ERISA suit. See 29 U.S.C. § 1132(g)(1). ERISA allows a prevailing party to recover "a reasonable attorney's fee and costs of action." Id. Before awarding fees, a District Court must consider several factors.

> These include: (1) the offending party's culpability or bad faith; (2) the ability of the offending parties to satisfy the award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon members of the [health benefit] plan as a whole; and (5) the relative merits of the parties' positions.

Martorana v. Bd. Trs. of Steamfitters Local Union 420 Health, Welfare & Pension Fund, 404 F.3d 797, 804 (3d Cir. 2005)(citing Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)). The Appellants do not argue on appeal that the District Court improperly applied these factors in deciding to award attorney's fees. Instead, they make several arguments seeking to reduce the fee award.

A useful starting point for determining the reasonableness of the fee is the lodestar calculation. See United Auto. Workers, 501 F.3d at 290 (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Under the lodestar approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. See id. The product of this calculation "is a presumptively reasonable fee, but it may still require subsequent adjustment." Id. (citations omitted).

In this case, with one minor exception, the Appellants do not challenge the hourly rate charged. Instead, Appellants assert that the time spent by Hahnemann's counsel on certain things should not have been included in the fee award. First, the Appellants assert that the fee award should be proportional to the

15

damage award.  Second, they assert that Hahnemann should not have been awarded attorney's fees for certain "secretarial services" performed by Hahnemann's counsel.  This marks Appellants' only argument with respect to the reasonableness of the hourly rate (and only applies to certain hours alleged by Hahnemann).  Third, Appellants assert that the fee award should be reduced because Hahnemann's counsel was from Colorado. They argue that had Hahnemann chosen local counsel, certain fees including researching local rules would not have been incurred.  On a related issue, the Appellants also argue that they should not be responsible for Hahnemann counsel's travel costs. They assert that had Hahnemann chosen local counsel, these travel expense costs would not have been incurred.  Fourth, Appellants assert that Hahnemann paid its counsel on a contingent fee basis, which would have resulted in a substantially reduced fee award.  Finally, the Appellants argue that the District Court improperly awarded Hahnemann attorney's fees for fees incurred by counsel during the pre-litigation administrative process.  We consider each of these arguments in turn.

### i.  *A "proportional" fee award*

First, the Appellants argue that the District Court erred by awarding Hahnemann approximately $136,000 in attorney's fees when the summary judgment award was only approximately $100,000.  They assert that an attorney's fees award in an ERISA case such as this should be approximately one-third of the damage award.  We reject this theory.  Recently, this Court joined several other Courts in rejecting a proportionality rule for attorney's fees awarded under ERISA.  See United Auto. Workers, 501 F.3d at 295 (citing Bldg. Serv. Local 47 v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995); Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1355 (9th Cir. 1990); Bd. of Trs. of the Hotel & Rest. Employees, Local 25 v. Madison Hotel, Inc., 43 F. Supp. 2d 8, 14 (D.D.C. 1999)).  Thus, we will not disturb the fee award based on this argument.

### ii.  *Fees for certain "secretarial services"*

16

Next, the Appellants assert that the District Court abused its discretion in awarding Hahnemann attorney's fees for "secretarial services" at the same rate as applied to "legal services." Appellants argue that the District Court awarded Hahnemann fees at a legal rate when counsel was only performing secretarial functions, such as typing. However, Hahnemann's counsel testified that he does not dictate or handwrite a document and then submit it to his secretary for typing. Rather, he testified that his work is a simultaneous process where a word processor replaces dictation or handwriting. He testified that this process is faster than actually dictating a document, giving it to his secretary for typing, then reviewing and editing the typewritten document. In light of this testimony, we will not disturb the fee award based on this argument.

iii. *Attorney's fees for time spent researching local rules and for travel costs incurred by Colorado counsel*

Third, Appellants argue that they should not have to pay Hahnemann for the time its counsel spent reviewing local rules. Hahnemann's counsel was from Colorado. Appellants assert that had Hahnemann chosen local counsel, he would not have had to review the local rules. Upon considering this assertion, we conclude that we will not disturb the fee award based on this argument.

Additionally, Appellants argue that the award to Hahnemann for its Colorado counsel's travel and associated expenses was improper. Appellants assert that "if Hahnemann retained an equally competent local counsel, these expenses would never have been incurred."[9] Section 1132(g)(1) of

---

[9] We note that this is the only issue Appellants raise on appeal with respect to the District Court's award of costs. Therefore, we decline to address the issue of the award of Court costs to the extent that some of these costs might have fallen outside of 28 U.S.C. § 1920. See, e.g., Agredano v. Mut. of Omaha Cos., 75 F.3d 541, 544 (9th Cir. 1996)(holding that Section 1132(g)(1)'s "allowance for 'costs of action' empowers courts to

ERISA gives a District Court discretion to award "costs" in addition to attorney's fees. We have stated that "under normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time, travel costs, or the costs of local counsel." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 710 (3d Cir. 2005). "However, where forum counsel are unwilling to represent plaintiff, such costs are compensable." Id. In this case, there is nothing in the record to suggest that counsel from within the forum was unwilling to represent Hahnemann in this straight forward, albeit lengthy Section 1132(a)(1)(B) action. Therefore, we will vacate and remand the District Court's award of travel and expense costs. On remand, the District Court can determine whether counsel in the forum would have been unwilling to represent Hahnemann. If so, then including these travel costs and expenses was proper. If not, then they should be stricken from the judgment.

iv. *The lodestar approach versus the contingency fee approach*

Fourth, Appellants assert that the evidence demonstrates that Hahnemann's counsel charged Hahnemann on a contingent fee basis. Appellants assert that "the evidence in this case reflects a contingent fee agreement which would have awarded the Plaintiff's attorney substantially less amount." While this statement might be true, it does not provide a basis for this Court to vacate the attorney's fee award.

In City of Burlington v. Dague, 505 U.S. 557, 565-66

---

award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 or by similar such provisions.")(citation omitted); see also, Anderson v. Unum Life Ins. Co. of Am., Civ. No. 01-894, 2007 WL 604728, at *15-16 (M.D. Ala. Feb. 22, 2007)(noting that costs are taxable only if they are specified by statute and that costs not enumerated under 28 U.S.C. § 1920 are not allowed under Section 1132(g)(1) of ERISA)(citations omitted); Neyer, Tiseo & Hindo, Ltd. v. Russell, Civ. No. 92-2983, 1994 WL 158917, at *3-4 (E.D. Pa. Apr. 29, 1994).

(1992), the Supreme Court noted that it has "generally turned away from the contingent-fee model - which would make the fee award a percentage of the value of the relief awarded in the primary action - to the lodestar model." This is true even though the lodestar model often results in a larger fee award. See id. at 566. Indeed, in Blanchard v. Bergeron, 489 U.S. 87 (1989), the Supreme Court reviewed an attorney fee award under 42 U.S.C. § 1988. However, in that case, the Supreme Court approved of the lodestar approach, "even though it produced a fee that substantially exceeded the amount provided in the contingent-fee agreement between plaintiff and his counsel." City of Burlington, 505 U.S. at 566 (citing Blanchard, 489 U.S. at 96). Thus, the District Court's application of the lodestar approach, as opposed to a contingency fee approach, was plainly appropriate.

v. *Attorney's fees during the pre-litigation administrative process under ERISA*

Finally, Appellants assert that the District Court erred in awarding attorney's fees to Hahnemann for those fees incurred during the pre-litigation administrative process. ERISA's attorney's fee provision states that, "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The question presented in this appeal, and one of first impression in this Circuit, is whether ERISA's attorney's fee provision limits a District Court to award only those fees incurred in formal judicial actions, or whether it also covers the fees incurred during the pre-litigation administrative process. Five Circuit Courts have considered this question, and all five have concluded that ERISA does not allow for the recovery of attorney's fees incurred during pre-litigation administrative proceedings. See Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999, 1010-11 (8th Cir. 2004); Rego v. Westvaco Corp., 319 F.3d 140, 150 (4th Cir. 2003); Peterson v. Cont'l Cas. Co., 282 F.3d 112, 119-21 (2d Cir. 2002); Anderson v. Procter & Gamble Co., 220 F.3d 449, 452-456 (6th Cir. 2000); Cann v. Carpenters' Pension Trust Fund for N. Cal., 989 F.2d 313, 315-17 (9th Cir. 1993). For the following

19

reasons, we agree with our sister circuits, and conclude that the fees incurred during administrative proceedings prior to filing suit are unavailable under 29 U.S.C. § 1132(g)(1).

As previously noted, Section 1132(g)(1) allows a District Court to award attorney's fees and costs incurred in "any action under this subchapter." We must determine whether Congress intended the term "action" to include administrative review proceedings related to the judicial action. "Used in a statute, the term 'action' traditionally connotes a formal adversarial proceeding under the jurisdiction of a court of law." Peterson, 282 F.3d at 119 (citations omitted).

While the Supreme Court has not reached the issue of whether the ERISA attorney's fee statutory provision allows for the award of fees incurred during pre-litigation administrative proceedings, its decisions interpreting other fee statutes support our holding today. For example, the Supreme Court has construed the phrase "action or proceeding" under Title VII to provide for fee awards for administrative proceedings which are not court actions. See N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 61 (1980); see also, Peterson, 282 F.3d at 121 (comparing the statutory language of Title VII as interpreted by the Supreme Court in N.Y. Gaslight Club, and noting that the ERISA attorney's fee statutory provision does not contain the word "or proceedings"); Cann, 989 F.2d 316 (same). As noted by the Supreme Court, "Congress' use of the broadly inclusive disjunctive phrase "action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings." N.Y. Gaslight Club, 447 U.S. at 61. Unlike Title VII, "the text of ERISA contains no similar reference to 'proceedings,' providing strong evidence that Congress did not intend ERISA to have as broad a reach as Title VII." Peterson, 282 F.3d at 121.

Hahnemann cites to Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986), to support its position that the award of pre-litigation fees was proper. In that case, the Supreme Court "held that, in interpreting a statutory provision authorizing attorneys' fees, reference to an

'action,' rather than an 'action or proceeding,' is 'not a sufficient indication that Congress intended [the fee-shifting provision] to apply only to judicial, and not administrative, proceedings.'" Anderson, 220 F.3d at 453 (citing Del. Valley, 478 U.S. at 559). However, the Sixth, Eighth and Ninth Circuits have all distinguished Delaware Valley because the Supreme Court authorized the award of attorney's fees "only when the administrative proceedings occurred after the litigation and where the administrative proceedings were necessary to enforce a final judgment that had been already obtained." Parke, 368 F.3d at 1011 (citing Anderson, 220 F.3d at 453; Cann, 989 F.2d at 317). We agree with these Courts that Delaware Valley is distinguishable. Unlike the administrative proceedings in Delaware Valley, the administrative proceedings related to Hahnemann's claim, while mandatory in its claim for benefits under ERISA, were not "necessary for enforcement of a judicial decree nor so closely connected to the resolution of the judicial action as to fall within the scope of . . . Delaware Valley." Id. Therefore, Hahnemann's reliance on Delaware Valley is misplaced.

Finally, Hahnemann asks us to apply a "modified rule" as stated in Peterson and Seal v. John Alden Life Insurance Co., 437 F. Supp. 2d 674 (E.D. Mich. 2006). In both cases, the prevailing party was awarded attorney's fees for the administrative review fees incurred during a court-ordered remand. See Peterson, 282 F.3d at 122; Seal, 437 F. Supp. 2d at 683-87. However, unlike Peterson and Seal, there was never a court-ordered remand for further administrative proceedings in this case. Therefore, we need not reach the issue of whether Hahnemann's so-called "modified rule" should apply. That issue, is best left to be decided by another court.

In sum, today we join our sister Circuits and hold that awarding a prevailing party attorney's fees for pre-litigation administrative proceedings under ERISA is inappropriate. Therefore, we will vacate and remand the District Court's attorney's fees award so that it can be recalculated in light of this

21

opinion.[10]

## IV.  CONCLUSION

In conclusion, we affirm the grant of summary judgment in favor of Hahnemann.  However, because the District Court improperly included the amount of time spent by Hahnemann's counsel during the pre-litigation administrative process, we vacate and remand the award of attorney's fees for further proceedings consistent with this opinion.  The award of travel and expense costs is also vacated and remanded for further proceedings because the District Court awarded travel and related expenses to Hahnemann for its counsel located outside of the forum, even though there was no finding that forum counsel would have been unwilling or unable to represent Hahnemann. Finally, because the District Court separately awarded Court costs, as well as and travel and expense costs in its judgment, and the Appellants did not object on appeal to any part of the award of Court costs, we will not disturb the District Court's award of Court costs.

---

[10]  In recalculating the attorney's fees on remand, the District Court should note that Hahnemann "is entitled collect a reasonable amount for fees and costs incurred in initiating suit in the District Court." Peterson, 282 F.3d at 121 n.5.  Thus, we agree with the Second Circuit that the time spent drafting the complaint is properly considered as part of the litigation in the District Court, even though it occurred prior to filing.  See id.